ERNEST A. RICE v. T. H. STEVENS, *et al.*

VOTES FOR COUNTY CLERK, *Ought to be Canvassed; Mandamus.* At the November election in 1878, J. was elected to the office of county clerk to fill a vacancy, and he qualified and served until January 12, 1880. At the November election in 1879, the defendant M., and another, were voted for for county clerk, but the returns of the votes were not canvassed.   On January 14, 1880, the county board declared the office of county clerk vacant, and appointed M. to fill the vacancy; M. accepted · the office, qualified, and is still serving.   At the November election in 1880, M. and the plaintiff, R., were candidates for the office, and R. received a large majority of the votes, but the county board refused to canvass the returns for that office, on the ground that there was no

vacancy in that office to be filled at that election; the sheriff had previously proclaimed and given notice that such an election would be held, and a full vote of the people was had for that office at that election. On December 18, 1880, the plaintiff, R., commenced this action of mandamus to compel the county board to canvass the returns, making M. a party defendant. On January 4, 1881, the board made their return to the alternative writ of mandamus, setting up their defenses. On March 15, the defendant M. made an application to the district judge at chambers, and obtained an alternative writ of mandamus to compel the county board to canvass the election returns for county clerk, of the election of 1879. On March 21, 1881, the board met, made an avowed canvass of the returns of the election, held in 1879, and declared that M. had been elected to the office of county clerk at that election. The board, however, did not attempt to canvass half the returns of that election, but attempted to canvass the returns from only four out of the nine voting precincts of the county, and even in this canvass, the board did not have any of the original returns before it. On April 6, 1881, this case in this court was called for trial; the defendants then filed an amended return, setting forth the foregoing facts, which transpired since the commencement of this action. *Held,* Under the foregoing facts, that it is the duty of the county board to canvass the returns of the election held in November, 1880, for the office of county clerk; and that none of the facts set forth as defenses will excuse the board.

### *Original Proceedings in Mandamus.*

ON the 18th of December, 1880, on the petition of *Rice,* an alternative writ of mandamus was issued out of this court and directed to *T. H. Stevens, F. B. Singer,* and *J. W. Clehouse,* commissioners of Harper county, and *H. O. Meigs,* county clerk thereof, commanding said commissioners as a canvassing board to meet on the 28th day of December, 1880, at the office of the county clerk of that county, and then and there to canvass the returns of the election held in that county November 2, 1880, for the office of county clerk thereof, and declare the result of such election, or to show cause, etc. The defendants answered, showing cause. The facts are sufficiently stated in the opinion filed May 3, 1881.

*Grove & Shepard,* for plaintiff.

*Davis & Jetmore,* for defendants.

The opinion of the court was delivered by

VALENTINE, J.: This is a case kindred to *Privett v. Stevens*, ante, p. 275, and the same questions of irregularity are involved therein; but no question of ineligibility to hold the office occurs in this case. There is, however, one new question to be considered in this case. In this action the plaintiff, Ernest A. Rice, obtained an alternative writ of mandamus to compel the defendants, T. H. Stevens, F. B. Singer, and J. W. Clehouse, the county commissioners of Harper county, and H. O. Meigs, the county clerk of said county, to canvass the election returns of an election held in that county in November, 1880, to fill a vacancy in the office of county clerk. The plaintiff claims that he was elected at that time to fill such vacancy. The defendants have made their return to the alternative writ, and upon the writ and the return a trial has been had; and the only new question developed on such trial, different from the questions which we have already decided in the case of *Privett v. Stevens*, is, whether there was any such vacancy as the plaintiff claims in the office of county clerk to be filled at that election. The facts of the case seem to be substantially as follows:

At the November election, in 1878, Henry E. Jesseph was elected county clerk to fill a vacancy. He qualified, and took possession of the office. At the November election, in 1879, the defendant H. O. Meigs and one E. T. Hughes were candidates for the office of county clerk, and were the only persons voted for. This election for county clerk was for the regular term. It does not appear which received the larger number of votes. Great frauds, however, were perpetrated at this election, and the returns thereof were not canvassed by the board of county commissioners. Jesseph continued to hold the office until January 12, 1880, when he attempted to remove it from the county seat. On January 14, 1880, the county commissioners met and declared that Jesseph had abandoned the office, and that the office was vacant, and ap-

pointed the defendant H. O. Meigs to fill the vacancy. Meigs qualified and took possession of the office. Afterward, and on March 13, 1880, Jesseph resigned the office, which resignation the county board accepted, and then confirmed the appointment of Meigs, made on January 14, 1880. Meigs continued to hold the office. On October 9, 1880, the sheriff issued his proclamation and gave notice, in accordance with law, stating the various officers to be chosen at the general election to be held in November, 1880; and in this proclamation and notice he included the office of county clerk. The candidates for the office of county clerk at that election were the plaintiff, Ernest A. Rice, and the defendant H. O. Meigs. Each made a canvass for the office, and each announced himself in the newspapers of the county as a candidate therefor. At the election the people generally voted for a candidate for that office, and the two candidates, Rice and Meigs, received a larger vote than the average vote of the county. Rice received 587 votes, and Meigs received 441 votes, making a total of 1,028 votes, and giving Rice 146 majority. Returns of this election were made from all the voting precincts, and the county commissioners canvassed these returns for presidential electors, members of congress and state officers, and for some of the county officers; but refused to canvass the returns for county clerk, and principally upon the ground that there was no vacancy in the office of county clerk to be filled at that election. Afterward, and on December 18, 1880, the plaintiff, Rice, commenced this action in this court to compel the commissioners to canvass said returns for county clerk. On January 4, 1881, the commissioners made their return to the alternative writ of mandamus, giving reasons why they had not canvassed the election returns. On March 15, 1881, the defendant Meigs applied to Hon. Samuel R. Peters, judge of the district court of that district, and obtained an alternative writ of mandamus to compel the county commissioners to canvass the election returns of the election held in Harper county for county clerk in 1879. This writ was allowed by the judge at chambers. On March 21, 1881,

20 — 25 KAS.

the commissioners made an avowed canvass of such returns, and declared that Meigs had been duly elected county clerk at said election in November, 1879. In fact, however, the commissioners did not canvass said returns. The returns had been abstracted from the county clerk's office, and were not then to be found. Besides, the commissioners did not attempt to canvass the returns from half of the voting precincts of the county. They attempted to canvass the returns from four voting precincts only, out of nine voting precincts in the county. How many votes were cast for the office of county clerk in the five voting precincts that were not canvassed, is not shown; nor is it shown how many votes from such precincts either candidate received; nor is there anything to show which candidate would have had a majority of the votes, if all the votes had been counted. Hence this canvass was not a very thorough or satisfactory one. The other candidate, E. T. Hughes, may have received a majority of the votes cast at that election. On March 23, 1881, the commissioners made a return to the alternative writ issued by Judge Peters, stating what they had done. The present case in this court was set for trial on April 6, 1881. When the case was called for trial the defendants filed an amended return, stating all the foregoing facts, which had transpired since the commencement of this action.

The case was then tried in this court upon the pleadings and the evidence; and upon the facts as shown by the pleadings and the evidence, we think the plaintiff is entitled to a peremptory writ of mandamus to compel the commissioners to canvass the returns of the election for county clerk held in November, 1880. At the time that the defendant Meigs was appointed county clerk, all the defendants admitted that there was a vacancy in the office; and if there was such vacancy, then the appointment of Meigs would continue only until the next general election, which was not held until November, 1880, and until his successor was qualified. This is substantially so provided by §§ 57 and 59 of the election law, (Comp. Laws 1879, p. 399,) and § 42 of the act concerning counties and

county officers (Comp. Laws 1879, p. 280) is in perfect harmony with this construction of the statutes. The theory of our law is, that officers shall be elected whenever it can be conveniently done; and that appointments to office will be tolerated only in exceptional cases. And it would seem from the election in the present case that all the people of Harper county considered that there was a vacancy in the office of county clerk, and that some person should be elected to fill such vacancy. And we would think that they were right. After the defendant Meigs, who claims to have been elected county clerk in 1879, acted as he has done, it must be presumed and held that even if he were elected to the office in 1879, which is certainly doubtful, he abandoned the office; that he virtually resigned the same. After he admitted that there was a vacancy, and accepted an appointment to the office as though there was a vacancy, and after he went into a contest for the office at an election by the people, thereby encouraging others to contest for the office before the people, and the people to vote for them, and after it was ascertained that he was not elected by the people, he cannot then, and for the first time, claim that he had a right to the office by virtue of an election held a year previously.

But if this is not so, still the peremptory writ of mandamus ought to be issued; for, supposing that it is not so, still the question is a doubtful one, and mere ministerial officers, like a board of canvassers, should not be allowed to determine such grave and doubtful questions. It is simply their duty to canvass the returns of the election as they find them, to count the votes that appear to have been cast for each candidate, and then, to declare the result; and if, for any cause, the person who has received the most votes, and whom they may declare to have been elected, and who may receive the certificate of election, is not entitled to the office, that question may be determined by another tribunal, in a proper action, instituted for that purpose. Also the county board, after acting for more than a year upon the theory that there was a vacancy in the office of county clerk, and that the defendant

Meigs was not entitled to the office under the election of November, 1879, should not hastily come to a different conclusion. *Prima facie,* at least, there was a vacancy in the office of county clerk to be filled at the November election in 1880, and the county board of canvassers, mere ministerial officers, ought not to have decided otherwise, but should have canvassed the returns.

Judgment will be rendered in favor of the plaintiff and against the defendants, and a peremptory writ of mandamus will be issued from this court to compel the defendants to canvass said election returns.

All the Justices concurring.